Filed 5/27/26  In re K.P. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| In re K.P., a Person Coming Under the Juvenile Court Law. | C102876 |
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.P.,<br>    Defendant and Appellant. | (Super. Ct. No. JJC-JV-DE-2021-0001230) |

After a contested jurisdictional hearing, the juvenile court found true the allegations that K.P. (minor) trafficked Jane D., a minor, and Jane V., an adult.  K.P. appeals, claiming there was insufficient evidence that she deprived Jane V. of her personal liberty.  We affirm.

**FACTS AND PROCEEDINGS**

In October 2022, Jane D.'s ex-boyfriend Jesus and another man named Gio pulled her by her hair out of her home and into their car after she refused to leave with them.  During the altercation, Gio hit Jane D. on the arm or shoulder with a handgun, which he had pointed at her earlier.

1

Jesus drove to a hotel where he picked up his girlfriend K.P., and the group drove to a river. K.P. and Jane D. got out of the car and fought one another, and then Jesus intervened and fought Jane D. Eventually Gio punched Jane D., knocked her down, gave K.P. the gun, and K.P. struck Jane D. in the head with the gun until Jane D. was bleeding. Jesus and Gio stopped the fight and threatened to shoot Jane D. Jesus and Gio then put Jane D. in the rear of the car, next to a door with a child lock which could not be opened from the inside. The group drove to a drug store to get supplies for Jane D.'s head injuries before driving back to the hotel.

At the hotel, Jane D. met Jane V. K.P. and Jesus told Jane D. that she was going to make money for them by working "the blade," which she understood meant having sex with people in exchange for money. K.P. and Jesus told Jane D. that she would have sex with clients in their cars and she had to remain within their view. K.P. told Jane D. she would have to make $1,000 a night and if she did not, she would be kicked, punched, or slapped. Jane D. would give Jesus and K.P. the money she earned but they would buy her clothes.

Jesus said Jane V. would teach Jane D. everything she needed to know and K.P. or Jesus told Jane D. that Jane V. had the same quota and did well. Jane V. had to give her money to Jesus or K.P. That night, Jane D. stayed in the hotel room with Jesus, K.P., and Jane V. Jane V. said she and Jane D. would be handcuffed together but instead Jesus and K.P. pushed their bed against the door. They told Jane D. that "hoes" did not sleep on the bed and Jesus and K.P. slept on the bed while Jane D. and Jane V. slept on the floor.

Jane D. was never left alone in the hotel room and Jesus told her not to try any "funny stuff," which she understood to mean she could not run away. Jesus told Jane D. not to talk to another pimp. Jesus slapped Jane V. in front of Jane D. because she had purportedly spoken to another pimp.

2

The next morning, Jesus, K.P., Jane D., and Jane V. drove to Sacramento where Jane V. was to show Jane D. how to "walk the blade." They stopped at a Walmart in Sacramento, and Jane V. got out of the car wearing a bra, underwear, and heels, even though it was cold. She waved at cars as if trying to attract customers but was unsuccessful and Jesus signaled her to return to the car.

They then stopped at a truck stop between Sacramento and Stockton and Jane V. got out of the car to look for customers. There was a woman at the truck stop who appeared to be a prostitute and Jane V. spoke with her. A man who appeared to be another pimp drove up, and he and Jesus got into an argument when the man pulled out a gun. Jesus told Jane V. to get in the car and he drove away quickly with Jane V. and Jane D.

Jesus called Gio and told him to be ready with his gun and arrived at a house where Gio was waiting outside. Gio got into the car in the back with Jane V. and Jane D., and Jesus tried to lose the other pimp, who was following them in his car. When Jesus stopped at a stop sign, Jane D. opened the car door, fell out of the car, and got up and ran to a nearby school. K.P. rolled down her car window and yelled at Jane D., "Watch when we get you again."

In December 2022, an officer responded to the Vanco truck stop parking lot in Stockton, an area known for prostitution. The officer spoke to Jane V., who was handcuffed and seated in a police car. She appeared to be terrified, with a shaky voice and quivering lip. She did not want to give a statement and declined an opportunity to have the handcuffs removed and to get out of the police car. After Jane V. was taken to the police station, she became more relaxed. Jane V. had marks and bruising on every area not covered by clothing. She removed a wig, revealing that her head was shaved in some areas that had apparent bruises or burns.

3

The People filed a juvenile petition under Welfare and Institutions Code section 602, charging K.P. with human trafficking of Jane D., a person under 18 (Pen. Code, § 236.1, subd. (c), count 1);[1] human trafficking of Jane V. (§ 236.1, subd. (b), count 2); and human trafficking of Jane S. Doe, a person under 18 (§ 236.1, subd. (c), count 3). The People also alleged as to count 1 that a principal was armed with a firearm during the offense. (§ 12022, subd. (a)(1).)

The juvenile court held a contested jurisdictional hearing in November and December 2023. At the hearing, Jane D. testified at length and a detective testified as an expert on human trafficking and prostitution. The detective explained that some pimps have partners who make sure the pimp's rules are followed. The detective further testified that the "blade" is an area known for prostitution, and one blade in Stockton is the Vanco truck stop. The detective identified K.P. as a passenger in a car driven by Jesus in the Vanco parking lot in December 2022. The detective interviewed Jane V., and she appeared to be terrified of Jesus, and nervous when discussing K.P., perhaps because she did not want to betray a friend. Jane V. seemed disappointed when she learned that K.P. might be charged with a crime.

The detective testified about Instagram messages between K.P. and Jane V., including a message where K.P. accused Jane V. of trying to "rat" on her. The detective opined that the message was designed to deter Jane V. from cooperating with police and testified that in the human trafficking subculture, physical punishment is common for "ratting" on someone, leading to victims being beaten, shot, or killed.

After the conclusion of the evidence, count 3, trafficking of Jane S., was dismissed upon motion of the People. The court then reviewed the evidence as to trafficking of Jane D., noting, among other things, the violence and injuries suffered by her at the hands

---

[1]     Undesignated statutory references are to the Penal Code.

of K.P. and Jesus; K.P.'s statement that Jane D. would "get her ass beat for every amount less than a thousand dollars she was expected to earn each night"; the statement that Jane V. had the same quota; Jane V.'s statement that she and Jane D. would be handcuffed together; how Jesus and K.P. pushed their bed against the door to keep Jane D. from leaving the room, and the fact that Jane D. was never left alone. Based on this evidence, the juvenile court found true count 1, trafficking of Jane D., and the accompanying firearm enhancement.

As to count 2, trafficking of Jane V, the court incorporated its prior findings as to Jane D. and noted that she witnessed K.P. and Jesus driving Jane V. to the blade, having her walk the street in a bra and panties for the purposes of prostitution and to teach Jane D. what was expected of her. The court further noted that Jane D. saw K.P. tell Jesus that Jane V. spoke with another pimp, and she watched as Jesus struck Jane V. Continuing, the court recounted that the previous night, Jane V. and Jane D. were handcuffed[2] and made to sleep on the floor because K.P. stated, "Hoes don't sleep on the bed."

The court then noted the officer's testimony that he had contact with Jane V. in December 2022 when she was handcuffed in the backseat of a patrol car. Jane V. was terrified, had a shaky voice and quivering lip, and declined to get out of the car or have her handcuffs removed. Jane V. had marks and bruising to every area of her body that was not covered, including her face, upper arms and lower arms, and when she took a wig off, her hair was cut in a weird fashion, and she had bruises and burns to her scalp.

---

[2] The trial court appears to have misspoken in stating that Jane D. and Jane V. were handcuffed, as Jane D. testified that Jane V. said they would be handcuffed together but Jesus and K.P. instead pushed the bed against the door, which the court had noted earlier in its oral findings as to count 1, the trafficking of Jane D.

Based on these facts, the court found beyond a reasonable doubt that K.P. committed the crime of human trafficking against Jane V., as alleged in count 2, and found she deprived or violated Jane V.'s personal liberty. The court further found that the offense involved force, fear, coercion, violence, duress, menace and threat of unlawful injury to Jane V.

The juvenile court later declared K.P. to be a ward of the court and imposed 1,080 days of confinement at the county jail with 619 days of credit but ordered that the confinement time was not to exceed December 2, 2025, her 21st birthday.

K.P. timely appealed.

## DISCUSSION

K.P. argues there is insufficient evidence that she deprived Jane V. of her personal liberty, meaning a substantial and sustained restriction of her liberty through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury. Although she concedes the evidence shows she deprived Jane D. of her liberty, she contends that the evidence suggests that Jane V.'s sex work was voluntary, and the evidence relied on by the juvenile court was only speculative.

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime ... beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also

6

reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.) The same standard of review for assessing the sufficiency of the evidence applies in both juvenile proceedings and in criminal cases. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 605.)

"Section 236.1 proscribes and sets forth the penalties for different kinds of human trafficking offenses." (*People v. McDowell* (2024) 99 Cal.App.5th 1147, 1153.) Defendant was charged with and convicted of human trafficking within the meaning of section 236.1, subdivision (b), which applies where a "person ... deprives or violates the personal liberty of another with the intent to effect or maintain a violation" of one of several specific crimes including pimping (§ 266h) and pandering (§ 266i). " 'Deprivation or violation of the personal liberty of another' includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out." (§ 236.1, subd. (h)(3).) "The total circumstances, including the age of the victim, the relationship between the victim and the trafficker or agents of the trafficker ... shall be factors to consider in determining the presence of 'deprivation or violation of the personal liberty of another,' 'duress,' and 'coercion' as described in this section." (*Id*., subd. (i).)

Contrary to K.P.'s contention, the evidence that K.P. deprived Jane V. of her personal liberty was not merely speculative. The trial court found that K.P. deprived victim Jane D. of her liberty -- a finding not challenged by K.P. -- based on the violence and injuries she suffered at the hands of K.P. and Jesus, K.P.'s threat that Jane D. would be beat if she earned less than $1,000 a night, Jane V.'s statement that she and Jane D. would be handcuffed, and Jesus and K.P. pushing the bed against the door to keep Jane D. from leaving the room. This evidence, in combination with expert testimony

7

regarding pimps and partners working together through use of force, fear, coercion, or threats supported an inference that K.P. and Jesus similarly used force, fear, coercion, or threats against Jane V.

The trial court further noted that Jane V. had the same $1,000 nightly quota, Jane V. was struck by Jesus after K.P. told him Jane V. talked to another pimp, Jane V. and Jane D were made to sleep on the floor, and Jane V. had suffered various injuries and was scared when police talked to her in December 2022.  Moreover, an expert testified regarding text messages between K.P. and Jane V. regarding "ratting" and opined that K.P. was threatening Jane V. with injury or death.  This evidence further supports an inference that K.P. used force, fear, coercion, or threats against Jane V. during the relevant time period.  Viewing all the evidence in the light most favorable to the juvenile court's determination, there was ample evidence K.P. deprived Jane V. of her personal liberty.

**DISPOSITION**

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
KRAUSE, Acting P. J.

/s/
BOULWARE EURIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9